Martin B. Pavane (MP4871)
Marilyn Neiman (MN6194)
COZEN O'CONNOR
277 Park Avenue
New York, New York 10172
Tel. (212) 883-4900
Fax: (212) 986-0604
Email: mpavane@cozen.com, mneiman@cozen.com

*Attorneys for Plaintiff Flickable LLC.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
FLICKABLE LLC,

|  |  |  |
|---|---|---|
| | Plaintiff, | Civil Action No. _____ |
| v. | | **COMPLAINT WITH JURY DEMAND** |
| FACTUM PARTNERS INC. and TOM GREENWOOD, | | |
| | Defendants. | |

-----------------------------------------------------------------------x

For its Complaint, plaintiff, Flickable LLC ("Flickable" or "Plaintiff"), by and through its

attorneys, Cozen O'Connor, alleges as follows:

## PARTIES

1.      Flickable is a Delaware limited liability company with a principal place of business

at 39 Morningside Drive, Ossining, New York 10562. At the time of filing this Complaint,

Flickable's membership consists of four individuals: two reside in Ossining, New York and two

reside in Los Angeles, CA.

2.      Upon information and belief, defendant Factum Partners, Inc. ("Factum") is a

Canadian corporation having a principal address at 1155 North Service Road, West Suite 11,

Oakville, Ontario, Canada, L6m 3E3.

3.     Factum also maintains a place of business at 5600 N. River Road, Suite 800, Rosemont, Illinois 60018.

4.     Factum owns and operates a website at the domain name www.factumpartnersinc.com, which identifies the above Canadian and U.S. addresses. Factum's letterhead also identifies these business addresses.

5.     Upon information and belief, Defendant Tom Greenwood ("Greenwood") (collectively with Factum, the "Defendants") is an individual principally residing in Ontario, Canada.

## JURISDICTION AND VENUE

6.     This is an action for: breach of contract; infringement of federally registered trade dress under 15 U.S.C. § 1114; contributory infringement of federally registered trade dress under 15 U.S.C. § 1114; patent infringement under 35 U.S.C. § 101 *et. seq.*; induced patent infringement under 35 U.S.C. § 271(b); trade secret misappropriation under the common law of the State of New York; trade secret misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b); and violation of New York's General Business Law § 349.

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and 1367, as well as 18 U.S.C. § 1836(c).

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is also proper in this Court under 28 U.S.C. § 1391(b)(3) in that there is no other district in which this action may be brought against Defendants, a Canadian corporation and a Canadian individual, and Defendants are subject to this Court's personal jurisdiction with respect to this action.

## BACKGROUND

### A.    Flickable and Its Lollipop Lip Gloss

9.      Flickable designs, manufactures, sells, and imports an award winning line of lip gloss sold under the mark FLICKABLE® and packaged in a unique, distinctive, and patented lollipop-shaped packaging.

10.      Flickable advertises, promotes, and sells its lip gloss throughout the world, including to consumers within this district, by and through its website operating at the domain name www.flickable.com, as well as through authorized distributors and at major international cosmetic conventions, such as Cosmoprof.

11.      Flickable offers its lip gloss in five (5) distinct flavors: "Fight for Your White to Party," "Do Ya Pink I'm Sexy?" "Better of Red," "Citrus How We Do It," and "Toffee Talk."

12.      Flickable's award winning lollipop packaging for its lip gloss is innovative, distinctive, and easily recognizable by consumers throughout the world.

13.      In 2014, Flickable received the Outstanding Packaging Design Award at the HBA Global International Package Design Awards (IPDA) in New York.

14.      Flickable also received significant press recognition for its lip gloss which was a featured product included in the 2015 Academy Award gift bags.

15.      Flickable's lip gloss is also regularly featured in other cosmetic industry media including periodicals, blogs, and other publications.

16.      Flickable's lollipop-shaped packaging is embodied in the claimed designs of United States Design Patent Nos. U.S. D712,595 (the "'595 Patent") and U.S. D740,493 (the "'493 Patent") (collectively, the "Flickable Patents"), copies of which are included herewith as Exhibit A.

17.     Kevin David, a co-founder of Flickable and its current Director of Sales and Marketing, is the sole inventor of the patented designs embodied in the Flickable Patents.

18.     Mr. David has assigned all of his rights, title, and interest in the Flickable Patents to Flickable.

19.     Flickable is the sole and rightful owner of all rights, title, and interest in the Flickable Patents.

20.      Flickable's unique and distinctive lollipop-shaped packaging is protected as trade dress under United States law (the "Flickable Trade Dress").

21.     Flickable registered the Flickable Trade Dress with the U.S. Patent and Trademark Office, and owns U.S. Trademark Reg. No. 4,849,051 (the "'051 Registration") for said Trade Dress. A true and correct copy of the '051 Registration certificate is attached as Exhibit B, and a true and correct copy of the Flickable Trade Dress is depicted below in Figure 1.



Figure 1 – Flickable Trade Dress

22.     The '051 Registration was granted on November 10, 2015, and is in full force and effect.

23.     Flickable has been continuously using the Flickable Trade Dress in commerce for its lip gloss products since at least as early as February 2, 2014.

24.     Exemplary promotional materials for Flickable's lip gloss products are attached herewith as Exhibit C.

25.     As a consequence of Flickable's extensive promotion and advertising of the Flickable Trade Dress, and the sale of its lip gloss products packaged in the Flickable Trade Dress, consumers have come to associate the Flickable Trade Dress as originating with Flickable.

26.     Flickable has enjoyed significant commercial success in the sale of its lip gloss in its lollipop-shaped packaging embodying the Flickable Trade Dress.

27.     Consumers of Flickable's lip gloss products have come to associate Flickable and its distinctive and highly recognizable packaging as the source of exceptionally high quality goods.

28.     Flickable proudly promotes its lip gloss products as "gluten-free" and "cruelty free," and employs the internationally recognized "leaping bunny" logo guaranteeing consumers that no animal tests were used in the development of the products.

29.     The "leaping bunny" logo is licensed exclusively by the Coalition for Consumer Information on Cosmetics (CCIC), and Flickable obtained a license from the organization People for the Ethical Treatment of Animals (PETA), a member of CCIC, after demonstrating that its high quality products were "cruelty free."

**B.     Flickable's Disclosure of Confidential Material to Defendants**

30.     Upon information and belief, Defendant Factum is a Canadian corporation in the business of sales development, business improvement, and other related business consulting services.

31.     Defendant Tom Greenwood is, upon information and belief, the founder and president of Factum, and resides in Ontario, Canada, where Factum is headquartered.

32.     Upon information and belief, Factum maintains a fully functional United States office having a business address in Rosemont, Illinois, but, upon information and belief, Factum is not registered to do business in the state of Illinois.

33.     Upon information and belief, Factum's Vice President USA, James Gillette, is an Illinois resident.

34.     Although, as of May 2016, Flickable had been commercially successful and had received widespread industry praise and recognition for its lip gloss products and its innovative and distinctive lollipop-shaped packaging, Flickable aspired to reduce its manufacturing costs and increase its manufacturing capacity while maintaining its high quality, cruelty free, and vegan free products.

35.     On or about May 2016, Kevin David of Flickable first met Defendant Tom Greenwood at which time they discussed the possibility that Mr. Greenwood, by and through Factum, could partner with Flickable to lower Flickable's manufacturing costs and increase the production capacity for Flickable's lip gloss products, and also to identify additional world-wide distributors.

36.     On or about June 3, 2016, Flickable and Factum executed a mutual nondisclosure agreement (the "NDA"), which Mr. Greenwood signed on behalf of Factum. A true and correct copy of the NDA is attached hereto as Exhibit D.

37.     Over the following months, Flickable's representatives had follow up meetings with Mr. Greenwood and Mr. Gillette, and Flickable and Factum exchanged presentations and proposals regarding a possible business partnership between the companies.

38.     Subject to certain exceptions, the NDA requires that, "[a]ll Disclosed Material shall be deemed confidential and shall be kept by the Receiving Party in strict confidence and under appropriate safeguards." Exhibit D, ¶ 4.

39.     The NDA also provides that:

If requested by the Disclosing Party, the Receiving Party (a) shall deliver to the Disclosing Party all written or tangible material delivered to the Receiving Party by the Disclosing Party which contains Material (including all copies thereof), and (b) shall destroy all summaries, analyses, extracts or other reproductions in whole or in part of such tangible material, and all documents, memorandum, notes and writings containing or based on Disclosed Material and prepared by the Receiving Party.

Exhibit D, ¶ 6

40.     The NDA also contains a forum selection clause submitting the parties to the personal jurisdiction of this Court. *See* Exhibit D, ¶ 8.

41.     Other than the NDA, Defendants and Flickable did not execute any other written agreement delineating the terms of the parties' relationship.

42.     Pursuant to the NDA, Flickable disclosed to Defendants confidential customer lists and confidential manufacturing know-how, including machine tooling Flickable owned and had used for manufacturing its lip gloss products in the United States.

43.     Flickable's machines, tooling, manufacturing know-how, and customer lists are valuable, confidential information of Flickable subject to trade secret protection.

44.      Defendants' execution of the NDA was a critical requirement of Flickable prior to disclosing its confidential information to Defendants.

45.     In September 2016, Flickable expressed to Defendants its concern that it had not received a single sample of the lower cost lip gloss product it was promised from Defendants.

7

46.     In response, Defendants insisted that Flickable representatives personally visit two Chinese factories engaged for the manufacturing of Flickable's lip gloss products in order to review product samples.

47.     Shortly thereafter, Flickable representatives visited the Chinese factories engaged by and through Defendants and became further concerned because the samples they were shown were of poor quality.  In particular, the lip gloss product developed by Defendants lacked a critical plumping agent and also lacked distinctive flavoring to distinguish among Flickable's five lip gloss flavors. Additionally, there were no completed samples of lollipop-shaped product packaging available for inspection by Flickable's representatives.

48.     Over the ensuing months, Flickable and Defendants attempted to address the disputes that had arisen between them concerning Defendants' failure to provide the services Flickable had expected from Defendants, but ultimately Flickable and Defendants agreed to end their affiliation as of May 31, 2017.

49.     Flickable has requested on numerous instances, in writing and orally, that Defendants return Flickable's confidential information provided pursuant to the NDA, but to date Defendants have not returned said confidential information despite the NDA's express requirement that Defendants do so.

### C.     Defendants Wanton Intellectual Property Infringement

50.     On or about June 24, 2017, an individual within the cosmetics industry brought to Flickable's attention that Defendants had been promoting to Flickable's customers under the name "Lolli Gloss" lip gloss products with lollipop-shaped packaging *identical* to Flickable's lollipop-shaped packaging.  A true and correct copy of Mr. Greenwood's communications to Flickable's customers, dated June 17, 2017, June 19, 2017, and June 21, 2017, are attached herewith as Exhibit

E (partially redacted to maintain the confidentiality of the recipient who forwarded Mr. Greenwood's communications to Flickable).

51.     Pursuant to the NDA, Flickable had disclosed to Defendants Flickable's valuable customer lists, which Flickable maintained in the strictest confidence. Upon information and belief, Defendants targeted customers on Flickable's customer lists in their communications promoting Defendants' competing Lolli Gloss lip gloss products.

52.     At least some of Defendants' communications promoting their Lolli Gloss products included attached .pdf brochures for the Lolli Gloss products which depicted lollipop-shaped product packaging identical to Flickable's protected lollipop-shaped packaging, thereby misappropriating Flickable's goodwill and deceiving consumers about the true owner and originator of Flickable's distinctive and award winning lollipop-shaped packaging.

53.     In Defendants' e-mails and Defendants' brochure, Defendants further misrepresent their product as "The Original Lollipop Lip Gloss," despite their knowledge that Flickable is the originator of the "Original Lollipop Lip Gloss" and with an intent to deceive the recipients of Defendants' emails and brochure.

54.     A comparison of Defendants' promotional literature for their "Lolli Gloss" lollipop-shaped lip gloss products with Flickable's website for its Flickable lollipop-shaped lip gloss products (shown below in Figure 2 (Defendants' advertising) and Figure 3 (Flickable's advertising)) shows that Defendants intentionally copied Flickable's promotional material; advertised, offered for sale, and sold their "Lolli Gloss" products in violation of Flickable's intellectual property rights; and traded off Flickable's goodwill in Flickable lollipop-shaped lip gloss products.



Figure 2 –Lolligloss Brochure (Exhibit E2, attachment at pg. 3)



Figure 3 – Flickable Website (www.flickable.com, Exhibit C)

55.     In a further effort to deceive purchasers and potential purchasers, Defendants' Lolli Gloss promotional materials promote benefits identical to the benefits identified by Flickable for its Flickable lip gloss products, namely, "cruelty free" and "gluten free," and Defendants' promotional materials also include the "leaping bunny logo," despite, upon information and belief, the fact that Defendants never obtained a license to use that logo from the CCIC or its members.

56.     Upon information and belief, Defendants are either producing shoddy lip gloss products, of the same poor quality they originally attempted to dupe Flickable into accepting, or have unlawful access to genuine Flickable lip gloss products to which they are applying the "Lolli Gloss" name.

57.     In a further attempt to confuse and deceive purchasers and potential purchasers, Defendants' Lolli Gloss products are sold in five flavors identical to the five flavors used by Flickable for its Flickable lip gloss products, and with slight variations in the names of the flavors. Defendants advertise the Lolli Gloss product flavors as "Gloss Orange Tangerine Flavor," "Glossy Pink, Passion Fruit Flavor," "Glossy Brown, Toffee Flavor," "Glossy White, Sugar Cookie Flavor," and "Glossy Red, Mixed Berry Flavor," and Flickable advertises its lip gloss product flavors as "Citrus How We Do It," "Do Ya Pink I'm Sexy?" "Toffee Talk," "Fight For Your White to Party," and "Better Off Red." *Compare* Figure 4 (Defendants' Advertising) *with* Figure 5 (Plaintiff's Advertising), *infra*.

58.     Reprinted below as Figure 4 (Defendants' Advertising) and Figure 5 (Plaintiff's Advertising) are examples of Defendants' copying of Flickable's marketing material depicting Flickable's lip gloss products.

59.     Defendants are further attempting to deceive purchasers and potential purchasers by using a font style and coloring similar to the font style and coloring in Plaintiff's marketing

materials, and by placing a design element between "Lolli" and "Gloss" that mimics the design element between "FLICK" and "ABLE"® in Plaintiff's depiction of its mark. *Compare* Figure 4 (Defendants' Advertising) *with* Figure 5 (Plaintiff's Advertising)



Figure 4 – Lolli Gloss brochure (Exhibit E2attachment at pg. 6)



Figure 5 – Flickable Promotional Material

60.     Defendants' email communications and brochure offer Defendants' Lolli Gloss products for sale to consumers throughout the world, including the United States.  Detailed pricing structure and distributorship contract terms are provided in Defendants' brochure (*see* Exhibit E1and Exhibit E2, and Defendants communications indicate that their Lolli Gloss products will be "ready for export late August 2017." *See* Exhibit E2 attachment at p. 13.

61.     In at least some instances, Defendant Greenwood's communications offering for sale Defendants' Lolli Gloss products were sent by and through Factum, from Defendant Greenwood's Factum e-mail address, and specifically targeted individuals having prior relationships with Flickable and purport to associate Defendants with Flickable. *See* Exhibit E1.

62.     In other instances, Defendant Greenwood's communications offering for sale Defendants' Lolli Gloss products were sent from the email address tgreenwood@lolligloss.com. *See* Exhibits E2 and E3. In these instances, the recipients of Mr. Greenwood's communications are hidden because Defendant Greenwood bcc'ed the recipients.

63.     Upon information and belief, one or more of the recipients of Defendants' e-mails reside in the United States and/or conduct business within the United States and could serve as distributors of Defendant's Lolli Gloss products to consumers within the United States.

64.     Recipients of Defendants' e-mails include customers taken from Flickable's confidential and protected customer lists, including several United States customers.

65.     Upon information and belief, Defendants' communications are directed at U.S. distributors, including distributors residing within this district, as evidenced by the facts that: prices are principally provided in U.S. dollars; the brochure and communications are entirely in English; and the communications indicate that Mr. Greenwood is "looking for distributor partners all over the world!" and that "All you have to do is ask yourself if it will be your company representing Lolli Gloss in your country."  *See* Exhibit E2.

66.     Attached as <u>Exhibit F</u> is a true and correct copy of the Defendants' website at the domain name www.lolligloss.com, accessed as of July 5, 2017. The Defendants' website incorporates material that is substantially similar to Flickable's promotional material, and brazenly advertises the product as an "Innovative, Cool Design," and touts its "Global Brand Presence."

67.     Upon information and belief, Defendant Greenwood is controlling Defendants' wrongful conduct related to the promotion, sale, offer for sale, importation, and/or use within the United States of Defendants' Lolli Gloss products, including the sending of Defendants' communications, design of the Lolli Gloss promotional material, purchasing of the www.lolligloss.com domain name, and establishing the website operating at that domain name.

68.     Upon information and belief, Defendants' unlawful activity related to the Lolli Gloss products is also being performed by and through, and with the knowledge of, Defendant

Factum and with the intent of Factum to deceive purchasers and potential purchasers of the Lolli Gloss products.

69.     In a further effort to conceal their unlawful activity while capitalizing on Flickable's goodwill and intellectual property, Defendants have registered the domain name www.lolligloss.com by proxy, i.e., without revealing the true owner of the Lolli Gloss website. Attached herewith as Exhibit G is a true and correct copy of the Who Is search for the domain name www.lolligloss.com.

70.     Defendants' "Lolli Gloss" name did not originate with Defendants.  Attached as Exhibit H is a true and correct copy of a June, 2016, e-mail communication from Kevin David of Flickable to Defendant Greenwood mentioning "Lolli Gloss."

71.     Upon information and belief, Defendants have been aware of the Flickable Patents, the Flickable Trade Dress, and Flickable's promotional materials (collectively the "Flickable Intellectual Property") since at least as early as May 2016.

72.     Defendants are not and never have been authorized to use the Flickable Intellectual Property other than as authorized by Flickable with respect to the promotion of genuine Flickable goods; Defendants have never been authorized to use the Flickable Intellectual Property with respect to non-Flickable cosmetic or beauty products; and Defendants have not been authorized to use the Flickable Intellectual Property for any purpose since at least May 31, 2017.

73.     The packaging of Defendants Lolli Gloss lip gloss products is identical to the Flickable Trade Dress, including the use of a lollipop shape having a symmetrical pattern on a dome, with the dome affixed on an elongated rod with a skirt.  Such an exact copy is a counterfeit of the Flickable Trade Dress and, on information and belief, resulted from the Defendants'

intentional and unauthorized use and/or misappropriation of Flickable's tooling, molds, machining and manufacturing know-how.

74.     Upon information and belief, Defendants' use of the Flickable Intellectual Property to offer for sale the infringing Lolli Gloss lip gloss products was done with the knowledge and intent that consumers would likely confuse Defendants Lolli Gloss lip gloss products with Plaintiff's genuine Flickable lip gloss products, and with the intent to thereby trade on Plaintiff's goodwill in the Flickable Trade Dress.

**COUNT I**
**BREACH OF CONTRACT**
**(DEFENDANT FACTUM)**

75.     The allegations of paragraphs 1-74 of this Complaint are incorporated by reference herein.

76.     Flickable and Factum entered into the NDA, which required Factum to maintain confidential material disclosed by Flickable to Factum in strict confidence and under appropriate safeguards. Exhibit D, ¶ 4. The NDA also required Factum to return all confidential written and tangible material provided by Flickable to Factum upon request by Flickable.

77.     Factum materially breached the NDA by failing to maintain confidential material disclosed by Flickable to Factum in strict confidence, and by failing to return Flickable's confidential written and tangible material to Flickable after Flickable requested the return of same.

78.     As a direct and proximate result of Factum's material breaches of the NDA, Flickable has suffered damages and irreparable injury.

79.     Flickable has suffered and will continue to suffer damages and irreparable injury unless Factum's ongoing breach of the NDA is enjoined.

80.     Flickable does not have a fully adequate remedy at law.

81.     Flickable is entitled to recover its costs and expenses, including its attorneys' fees, on this cause of action. *See* Exhibit D, ¶ 7.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)
## (ALL DEFENDANTS)

82.     The allegations of paragraphs 1-74 of this Complaint are incorporated by reference herein.

83.     The Flickable Trade Dress is now, and at all relevant times has been, in use by Flickable.

84.     The Flickable Trade Dress as used by Defendants is a counterfeit of a mark that is registered on the Principal Register in the United States Patent and Trademark Office for cosmetics, namely lip gloss, lipstick.

85.     Defendants' use of the Flickable Trade Dress in connection with the promotion, advertising, offering for sale, and sale of lip gloss in their lollipop-shaped packaging of Exhibits E and F is likely to cause confusion, mistake and/or deception in the minds of consumers as to the ownership, sponsorship and/or affiliation of Defendants with Flickable, and/or the origin of goods purchased from Defendants, in that customers are likely to believe that Defendants and/or its goods are owned by, sponsored by, authorized by, or affiliated with Flickable, and/or that Defendants goods originate with Flickable, when in fact that is not the case, all to the damage and detriment of Flickable's reputation and goodwill.

86.     Defendants' actions as foresaid constitute infringement of the registered Flickable Trade Dress and the use of a counterfeit mark in violation of 15 U.S.C. § 1114.

87.     As a result of Defendants' infringement of the registered Flickable Trade Dress, Flickable has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

88.     Defendants have profited and continue to profit from their infringement.

89.     Defendants' infringement of the registered Flickable Trade Dress was and is willful and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

90.     Flickable has suffered and will continue to suffer damages and irreparable injuries unless Defendants' infringement of the Flickable Trade Dress is enjoined.

91.     Flickable does not have a fully adequate remedy at law.

**COUNT III**
**CONTRIBUTORY TRADEMARK INFRINGEMENT**
**(ALL DEFENDANTS)**

92.     The allegations of paragraphs 1-74 and 83-91 of this Complaint are incorporated by reference herein.

93.     Upon information and belief, third party distributors, retailers, merchants, and other individuals are engaging in tortious conduct in violation of the Lanham Act, including by promoting, advertising, offering for sale, selling, and distributing Defendants Lolli Gloss lip gloss products in Defendants' infringing packaging.

94.     Defendants have knowledge of such tortious conduct based upon, among other things, Defendants' knowledge of Flickable's Trade Dress.

95.     Upon information and belief, despite such knowledge, Defendants have knowingly and intentionally induced such third parties to infringe the Flickable Trade Dress by, among other things, supplying Defendants' Lolli Gloss lip gloss products in infringing lollipop-shaped

packaging and by providing to such third parties advertising and marketing materials depicting the infringing packaging.

96.     Upon information and belief, Defendants have continued to supply to such third parties Lolli Gloss lip gloss products in the infringing packaging and advertising and marketing material depicting the infringing packaging with knowledge that such third parties are engaging in infringement of the Flickable Trade Dress.

97.     Defendants are also actively inducing such third parties to engage in wrongful, infringing conduct under the Lanham Act as described herein.

98.     Defendants are contributorily liable for such third parties' infringement of the Flickable Trade Dress in violation of 15 U.S.C. § 1051, *et seq*.

99.     As a result of Defendants' contributory trademark infringement, Flickable has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

100.    Defendants have profited and will continue to profit from Defendants' contributory trademark infringement.

101.    Defendants' contributory trademark infringement was and is willful and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

102.     Flickable has suffered and will continue to suffer damages and irreparable injuries unless Defendant's contributory trademark infringement is enjoined.

103.     Flickable does not have a fully adequate remedy at law.

**COUNT IV**
**INFRINGEMENT OF THE '595 PATENT (35 U.S.C. § 271(a))**
**(ALL DEFENDANTS)**

104.    The allegations of paragraphs 1-74 and 83-91 of this Complaint are incorporated by reference herein.

105.    The '595 Patent is valid and enforceable.

106.    The '595 Patent claims a non-functional ornamental design for a lip gloss container.

107.    Defendants have appropriated the ornamental design of the '595 Patent, and are infringing, literally or under the doctrine of equivalents, the '595 Patent by making, using, offering for sale, selling in this district and elsewhere in the United States, and/or importing into this district and elsewhere in the United States, without license or authority, products that infringe the '595 Patent.

108.    Defendants had notice that the Flickable's lollipop-shaped packaging was protected under the '595 Patent at least by virtue of Defendants' prior business relationship with Flickable and communications between Flickable and Defendants during the course of that relationship.

109.    Upon information and belief, Defendants are continuing the manufacture, use, offer for sale, sale, and importation of their infringing Lolli Gloss lip gloss products despite their knowledge of the '595 Patent.

110.    Defendants acted, and continue to act, recklessly by continuing their infringing activities despite a high likelihood that their actions constituted infringement of the '595 Patent, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement.

111.    Flickable has suffered and will continue to suffer damages and irreparable injuries unless Defendants' infringement of the '595 Patent is enjoined.

112.    Flickable does not have a fully adequate remedy at law.

**COUNT V**
**INDUCED INFRINGEMENT OF THE '595 PATENT (35 U.S.C. § 271(b))**
**(ALL DEFENDANTS )**

113.    The allegations of paragraphs 1-74, 83-91, and 105-112 of this Complaint are incorporated by reference herein.

114.    Defendants have infringed the '595 Patent by knowingly and actively inducing others, including third party distributors, customers, and other cosmetic and beauty industry companies, to engage in direct infringement of the '595 Patent by offering for sale and selling Defendants' infringing Lolli Gloss lip gloss products with knowledge and intent to induce such infringing acts.

115.    Defendants' inducement of infringement of the '595 Patent has been willful, deliberate, and objectively reckless.

116.    Flickable has suffered and will continue to suffer damages and irreparable injuries unless Defendants inducement of infringement of the '595 Patent is enjoined.

117.    Flickable does not have a fully adequate remedy at law.

### COUNT VI
### INFRINGEMENT OF THE '493 PATENT (35 U.S.C. § 271(a))
### (ALL DEFENDANTS)

118.    The allegations of paragraphs 1-74 and 83-91 of this Complaint are incorporated by reference herein.

119.    The '493 Patent is valid and enforceable.

120.    The '493 Patent claims a non-functional ornamental design for a dome for lip gloss container.

121.    Defendants have appropriated the ornamental design of the '493 Patent, and are infringing, literally or under the doctrine of equivalents, the '493 Patent by making, using, offering for sale, selling in this district and elsewhere in the United States, and/or importing into this district

21

and elsewhere in the United States, without license or authority, products that infringe the '493 Patent.

122.    Defendants had notice that the Flickable's lollipop-shaped packaging was protected under the '493 Patent at least by virtue of Defendants' prior business relationship with Flickable and communications between Flickable and Defendants during the course of that relationship.

123.    Upon information and belief, Defendants are continuing the manufacture, use, offer for sale, sale, and importation of their infringing Lolli Gloss lip gloss products despite their knowledge of the '493 Patent.

124.    Defendants acted, and continue to act, recklessly by continuing their infringing activities despite a high likelihood that their actions constituted infringement of the '493 Patent, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement.

125.    Flickable has suffered and will continue to suffer damages and irreparable injuries unless Defendants' infringement of the '493 Patent is enjoined.

126.    Flickable does not have a fully adequate remedy at law.

### COUNT VII
### INDUCED INFRINGEMENT OF THE '493 PATENT (35 U.S.C. § 271(b))
### (All DEFENDANTS)

127.    The allegations of paragraphs 1-74, 83-91, and 119-126 of this Complaint are incorporated by reference herein.

128.    Defendants have infringed the '493 Patent by knowingly and actively inducing others, including third party distributors, customers, and other cosmetic and beauty industry companies, to engage in direct infringement of the '493 Patent by offering for sale and selling

Defendants' infringing Lolli Gloss lip gloss products with knowledge and intent to induce such infringing acts.

129.    Defendants' inducement of infringement of the '493 Patent has been willful, deliberate, and objectively reckless.

130.    Flickable has suffered and will continue to suffer damages and irreparable injuries unless Defendants' inducement of infringement of the '493 Patent is enjoined.

131.    Flickable does not have a fully adequate remedy at law.

**COUNT VIII**
**MISAPPROPRIATION OF TRADE SECRETS**
**(NEW YORK COMMON LAW)**
**(ALL DEFENDANTS)**

132.    The allegations of paragraphs 1-74, 76-81, 83-91, 93-103, 105-112, 114-117, 119-126, and 128-131 of this Complaint are incorporated by reference herein.

133.    Flickable possess numerous trade secrets including, but not limited to, its manufacturing know-how for the process of manufacturing its lip gloss products and lollipop-shaped packaging, Flickable's tooling and machines to produce its lip gloss and lollipop-shaped packaging, and its customers lists (collectively, the "Flickable Trade Secrets").

134.    The Flickable Trade Secrets have significant value to Flickable in its business of manufacturing and selling beauty and cosmetic products, namely its line of lip gloss in its award winning lollipop-shaped product packaging.

135.    The Flickable Trade Secrets give Flickable a competitive advantage over its competitors who do not know the Flickable Trade Secrets. The Flickable Trade Secrets are critical to manufacturing and selling Flickable's acclaimed lip gloss products in Flickable's lollipop-shaped packaging.

136.     Flickable has taken reasonable efforts to keep the Flickable Trade Secrets secret including, but not limited to, limiting access to the Flickable Trade Secrets and requiring employees, agents, independent contractors, or other persons who are granted access to the Flickable Trade Secrets to sign confidentiality or non-disclosure agreements.

137.     Defendants had access to and acquired the Flickable Trade Secrets pursuant to the NDA.  Pursuant to the NDA, and as Flickable's representative and agent, Defendants owed a duty to Flickable to maintain the Flickable Trade Secrets as confidential and to neither use nor disclose the Flickable Trade Secrets outside the terms of the NDA.

138.     Defendants have used and are using the Flickable Trade Secrets in breach of the NDA to make, use, sell, offer to sell, and/or import, Defendants' Lolli Gloss lip gloss products.

139.     Defendants' wrongful conduct constitutes a misappropriation of the Flickable Trade Secrets under New York common law.

140.     Flickable has suffered and will continue to suffer damages and irreparable injuries unless Defendant's misappropriation of the Flickable Trade Secrets is enjoined.

141.     Flickable does not have a fully adequate remedy at law.

**COUNT IX**
**MISAPPROPRIATION OF TRADE SECRETS**
**(DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836(b))**
**(ALL DEFENDANTS)**

142.     The allegations of paragraphs 1-74, 76-81, 83-91, 93-103, 105-112, 114-117, 119-126, 128-131, and 133-141 of this Complaint are incorporated by reference herein.

143.     Defendants' wrongful conduct constitutes a misappropriation of the Flickable Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b).

144.     Flickable has suffered and will continue to suffer damages and irreparable injuries unless Defendant's misappropriation of the Flickable Trade Secrets is enjoined.

145.    Flickable does not have a fully adequate remedy at law.

## COUNT X
## VIOLATION OF N.Y. GENERAL BUSINESS LAW § 349
## (ALL DEFENDANTS)

146.    The allegations of paragraphs 1-74, 76-81, 83-91, 93-103, 105-112, 114-117, 119-126, 128-131, 133-141, and 143-145 are incorporated by reference herein.

147.    Defendants' acts complained of herein constitute deceptive acts or practices in violation of New York's General Business Law § 349.

148.    Defendants conduct has been, and is, directed at the public at large, thereby injuring Plaintiff.

149.    Defendants' conduct was and is willful and/or intentional.

150.    Flickable does not have a fully adequate remedy at law.

## JURY DEMAND

Pursuant to Rule 38(b), Fed. R. Civ. P., Flickable requests a trial by jury on all issues triable to a jury.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

## COUNT I
## BREACH OF CONTRACT

A)    Enjoining Factum, together with its officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with it, from using, selling, disseminating, publishing, or otherwise disclosing the Disclosed Material as that term is defined in the NDA;

B)    Directing Factum, together with its officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with it, to deliver up to Plaintiff

for destruction all Disclosed Material (as defined in the NDA) in its possession, custody, or control, and confirm same in writing by a certification to this Court; and

C)      Awarding Plaintiff its costs and expenses, including attorneys' fees, for bringing this action, including pre- and post-judgment interest on any monetary award, including any attorneys' fee award, all as provided in the NDA.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

A)      Enjoining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, pursuant to 15 U.S.C. § 1116(a):

1)      from selling, offering to sell, marketing, promoting, or advertising products using the Flickable Trade Dress; and

2)      from selling, offering to sell, marketing, promoting, or advertising the sale of any goods or services under any designation likely to be confused with the Flickable Trade Dress;

B)      Granting an Order providing for the seizure of goods and counterfeit marks involved in Defendants' infringement of the Flickable Trade Dress, and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such infringement, pursuant to 15 U.S.C. § 1116(d)(1)(A);

C)      Directing Defendants to deliver up to Plaintiff all things in their possession, custody, or control bearing the Flickable Trade Dress, and/or any other designation likely to be confused with the Flickable Trade Dress, pursuant to 15 U.S.C. § 1118;

D)      Directing Defendants to account for and pay over to Plaintiff all profits Defendants obtained, received, or derived from selling, or offering to sell, goods or services bearing the

Flickable Trade Dress, or any other designation likely to be confused with the Flickable Trade Dress, pursuant to 15 U.S.C. § 1117(a);

E)      Awarding Plaintiff all damages suffered as a consequence of Defendants' acts of infringement, pursuant to 15 U.S.C. § 1117(a);

F)      Awarding Plaintiff up to three times its damages and/or Defendants' profits, pursuant to 15 U.S.C. § 1117(a);

G)      Entering judgment for three times Defendants' profits or Plaintiff's damages, whichever is greater, together with a reasonable attorneys' fee, pursuant to 15 U.S.C. § 1117(b) or, at Plaintiff's election at any time before final judgment, an award of statutory damages in the amount of (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just; or (2) if the Court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just, pursuant to 15 U.S.C. § 1117(c);

H)      Declaring that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

I)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing, and prosecuting this action, pursuant to 15 U.S.C. § 1117(a);

J)      Awarding Plaintiff the costs and disbursements of this action, and pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

**COUNT III**
**CONTRIBUTORY TRADEMARK INFRINGEMENT**

A)      Enjoining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, pursuant to 15 U.S.C. § 1116(a):

1)      from contributing to the sale, offer for sale,  marketing, promotion, or advertising of products using the Flickable Trade Dress;

2)      from contributing to the sale, offer for sale,  marketing, promotion, or advertising of any goods or services under any designation likely to be confused with the Flickable Trade Dress;

B)      Granting an Order providing for the seizure of goods and counterfeit marks involved in Defendants' infringement, and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such infringement, pursuant to 15 U.S.C. § 1116(d)(1)(A);

C)      Directing Defendants to deliver up to Plaintiff all things in their possession, custody, or control bearing the Flickable Trade Dress, and/or any other designation likely to be confused with the Flickable Trade Dress, pursuant to 15 U.S.C. § 1118;

D)      Directing Defendants to account for and pay over to Plaintiff all profits Defendants obtained, received, or derived from selling, or offering to sell, goods or services bearing the Flickable Trade Dress, or any other designation likely to be confused with the Flickable Trade Dress, pursuant to 15 U.S.C. § 1117(a);

E)      Awarding Plaintiff all damages suffered as a consequence of Defendants' acts of infringement, pursuant to 15 U.S.C. § 1117(a);

F)      Awarding Plaintiff up to three times its damages and/or Defendants' profits, pursuant to 15 U.S.C. § 1117(a);

G)      Entering judgment for three times Defendants' profits or Plaintiff's damages, whichever is greater, together with a reasonable attorneys' fee, pursuant to 15 U.S.C. § 1117(b) or, at Plaintiff's election at any time before final judgment, an award of statutory damages in the amount of (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just; or (2) if the Court finds

that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just, pursuant to 15 U.S.C. § 1117(c);

H)      Declaring that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

I)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 15 U.S.C. § 1117(a); and

J)      Awarding Plaintiff the costs and disbursements of this action, and pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

**COUNT IV**
**INFRINGEMENT OF THE '595 PATENT**

A)      Enjoining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, from infringing the '595 patent pursuant to 35 U.S.C. § 283;

B)      Awarding Plaintiff all damages suffered as a consequence of Defendants' acts of infringement, pursuant to 35 U.S.C. § 284;

C)       Declaring Defendants' infringement to be willful and trebling all damages awarded to Plaintiff based on Defendants' willful infringement of the '595 Patent;

D)      Declaring that this case is "exceptional" within the meaning of 35 U.S.C. § 285;

E)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 35 U.S.C. § 285; and

F)      Awarding Plaintiff the costs and disbursements of this action, and pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

**COUNT V**
**INDUCED INFRINGEMENT OF THE '595 PATENT**

A)      Enjoining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, from inducing infringement of the '595 Patent pursuant to 35 U.S.C. § 283, and/or inducement of the same;

B)      Awarding Plaintiff all damages suffered as a consequence of Defendants' inducement of infringement of the '595 Patent, pursuant to 35 U.S.C. § 284;

C)      Declaring Defendants' inducement of infringement of the '595 Patent to be willful and trebling all damages awarded to Plaintiff based on Defendants' willful infringement of the '595 Patent;

D)      Declaring that this case is "exceptional" within the meaning of 35 U.S.C. § 285;

E)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 35 U.S.C. § 285; and

F)      Awarding Plaintiff the costs and disbursements of this action, and pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

## COUNT VI
## INFRINGEMENT OF THE '493 PATENT

A)      Enjoining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, from infringing the '493 patent pursuant to 35 U.S.C. § 283;

B)      Awarding Plaintiff all damages suffered as a consequence of Defendants' acts of infringement, pursuant to 35 U.S.C. § 284;

C)      Declaring Defendants' infringement to be willful and trebling all damages awarded to Plaintiff based on Defendants' willful infringement of the '493 Patent;

D)      Declaring that this case is "exceptional" within the meaning of 35 U.S.C. § 285;

E)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 35 U.S.C. § 285; and

F)      Awarding Plaintiff the costs and disbursements of this action, and pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

## COUNT VII
## INDUCED INFRINGEMENT OF THE '493 PATENT

A)      Enjoining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, from inducing infringement of the '493 Patent pursuant to 35 U.S.C. § 283;

B)      Awarding Plaintiff all damages suffered as a consequence of Defendants' inducement of infringement of the '493 Patent, pursuant to 35 U.S.C. § 284;

C)      Declaring Defendants' inducement of infringement to be willful and trebling all damages awarded to Plaintiff based on Defendants' willful infringement of the '493 Patent;

D)      Declaring that this case is "exceptional" within the meaning of 35 U.S.C. § 285;

E)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 35 U.S.C. § 285; and

F)      Awarding Plaintiff the costs and disbursements of this action, and pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

## COUNT VIII
## MISAPPROPRIATION OF TRADE SECRETS (NEW YORK)

A)      Enjoining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys and all other persons acting in concert with them from any actual or threatened misappropriation of the Flickable Trade Secrets;

B)      Should the Court find an injunction to be inequitable, conditioning future use of the Flickable Trade Secrets upon payment of a reasonable royalty;

31

C)      Awarding Plaintiff all damages suffered as a consequence of Defendants' misappropriation, including Plaintiff's actual damages and any unjust enrichment of Defendants;

D)      Declaring that Defendants' misappropriation was willful and/or malicious;

E)      Awarding Plaintiff enhanced or exemplary damages for Defendants' willful and/or malicious misappropriation;

F)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action; and

G)      Awarding Plaintiff the costs and disbursements of this action, and pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

### COUNT IX
### MISAPPROPRIATION OF TRADE SECRETS (DTSA)

A)      Enjoining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys and all other persons acting in concert with them from any actual or threatened misappropriation of the Flickable Trade Secrets, pursuant to 18 U.S.C. § 1836(b)(3)(A);

B)       Should the Court find an injunction to be inequitable, conditioning future use of the Flickable Trade Secrets upon payment of a reasonable royalty;

C)      Awarding Plaintiff all damages suffered as a consequence of Defendant's misappropriation, including Plaintiff's actual damages and any unjust enrichment of Defendants, pursuant to 18 U.S.C. § 1836(b)(3)(B);

D)      Declaring that Defendants' misappropriation was willful and/or malicious;

E)      Awarding Plaintiff enhanced or exemplary damages for Defendants' willful and/or malicious misappropriation, pursuant to 18 U.S.C. § 1836;

F)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action, pursuant to 18 U.S.C. § 1836; and

G)     Awarding Plaintiff the costs and disbursements of this action and pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

**COUNT X**
**VIOLATION OF N.Y. GENERAL BUSINESS LAW § 349**

A)     Enjoining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys and all other persons acting in concert with them:

1)     from selling, offering to sell, marketing, promoting, or advertising products using the Flickable Intellectual Property and/or the Flickable Trade Secrets;

2)     from selling, offering to sell, marketing, promoting, or advertising the sale of any goods and/or services under any designation likely to be confused with Flickable Trade Dress;

3)     from making or publishing any representations concerning Plaintiff and/or the Flickable Trade Dress and/or any lip gloss having a lollipop-shaped packaging, stating, suggesting or implying that Defendants or either of them and/or that any of Defendants' goods or services are affiliated with, owned by, authorized by, and/or sponsored by Plaintiff; and

4)     engaging in any other acts in violation of N.Y. General Business Law § 349;

B)     Directing Defendants to deliver up to Plaintiff all things in their possession, custody, or control bearing the Flickable Intellectual Property, and/or embodying or based on the Flickable Trade Secrets, and/or any designation likely to be confused with the Flickable Trade Dress;

C)     Directing Defendants to account for and pay over to Plaintiff all profits Defendants obtained, received, or derived from selling, or offering to sell, goods or services bearing the Flickable Trade Dress or any designation likely to be confused with the Flickable Trade Dress, or made or sold using the Flickable Trade Secrets;

D)     Awarding Plaintiff all damages suffered as a consequence of Defendants' conduct;

E)      Declaring that Defendants willfully and knowingly violated N.Y. General Business Law § 349 and awarding Plaintiff three times its actual damages;

F)      Awarding Plaintiff the attorneys' fees it has incurred in investigating, bringing and prosecuting this action; and

G)      Awarding Plaintiff the costs and disbursements of this action and pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

## AS TO ALL COUNTS

Awarding Plaintiff such other, further or different relief in its favor and against Defendants as this Court may deem just and proper.

Dated:  July 12, 2017                              COZEN O'CONNOR

/s/ *Martin B. Pavane*
Martin B. Pavane (MP4871)
Marilyn Neiman (MN6194)
277 Park Avenue
New York, New York 10172
Tel. (212) 883-4900
Fax: (212) 986-0604
Email: mpavane@cozen.com,
mneiman@cozen.com

*Attorneys for Plaintiff Flickable LLC*