# EXHIBIT D

## MUTUAL NONDISCLOSURE AGREEMENT

**THIS MUTUAL NONDISCLOSURE AGREEMENT** (this "Agreement") is entered into as of June 3, 2016, by and between Flickable LLC and Factum Partners Inc. Each party hereto desires to obtain from the other party certain information regarding the other party. In order for the parties hereto to provide such information, the parties hereto agree to comply with the terms and conditions of this Agreement.

For and in consideration of the mutual promises contained herein, each of the parties agrees as follows:

1. For purposes of this Agreement, the following capitalized terms shall have the following meanings: (a) "Disclosed Material" means all information disclosed to the Receiving Party by the Disclosing Party; (b) "Representatives" mean all directors, officers, members, managers, employees, agents or advisors or any similar person of the Receiving Party; (c) "Designated Purpose" means the evaluation of the Disclosed Material by the Receiving Party for the sole purpose of discussing and evaluating the possibility of a transaction between the Receiving Party and the Disclosing Party; (d) "Receiving Party" means the party receiving Disclosed Material from the other party; and (e) "Disclosing Party" means the party providing Disclosed Material to the other party.

2. As used herein, the term "Disclosed Material" does not include any information which (i) is generally available to the public or to industry employees (other than employees of the Disclosing Party) other than as a result of a disclosure by the Receiving Party, its Representatives or anyone to whom the Receiving Party or any of its Representatives directly or indirectly transmit any Disclosed Material, (ii) becomes known or available to the Receiving Party on a non-confidential basis from a source (other than the Disclosing Party or one of its Representatives) who is not prohibited from transmitting the information to the Receiving Party or its Representatives by any contractual, legal, fiduciary or other obligation, or (iii) was known or available to the Receiving Party prior to the date hereof on a non-confidential basis from a source (other than the Disclosing Party or one of its Representatives) who is not prohibited from transmitting the information to the Receiving Party or its Representatives by any contractual, legal, fiduciary or other obligation.

3. In the event that the Receiving Party, its Representatives or anyone to whom the Receiving Party or its Representatives supply the Disclosed Material receives a request to disclose all or part of the Disclosed Material (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand, any informal or formal investigation by any government or governmental agency or authority or otherwise) the Receiving Party agrees (a) to immediately notify the Disclosing Party of the existence, terms and circumstances surrounding such a request, (b) to consult with the Disclosing Party on the advisability of taking legally available steps to resist or narrow such request, and (c) if disclosure of such information is required, to furnish only that portion of the Disclosed Material which, in the written opinion of the Receiving Party's counsel, the Receiving Party is legally compelled to disclose, and to cooperate with any action by the Disclosing Party to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded to such portion of the disclosed Disclosed Material which the Disclosing Party so designates.

4. All Disclosed Material shall be deemed confidential and shall be kept by the Receiving Party in strict confidence under appropriate safeguards. In this regard, without the prior written consent of the Disclosing Party, the Receiving Party shall not, directly or indirectly, (a) disclose any Disclosed Material to anyone except to a limited group of its Representatives who are actively and directly involved in the Designated Purpose or (b) use the Disclosed Material for any purpose other than the Designated Purpose.

5. The Disclosing Party shall not (a) be deemed to make or have made any representation or warranty, express or implied, as to the accuracy or completeness of any Disclosed Material furnished by or on behalf of the Disclosing Party to the Receiving Party; (b) have any liability to the Receiving Party resulting from the provision of the Disclosed Material to the Receiving Party or the use thereof by the Receiving Party; or (c) have any obligation to provide or continue providing any Disclosed Material to the Receiving Party.

6. If requested by the Disclosing Party, the Receiving Party (a) shall deliver to the Disclosing Party all written or tangible material delivered to the Receiving Party by the Disclosing Party which contains Disclosed Material (including all copies thereof), and (b) shall destroy all summaries, analyses, extracts or other reproductions

in whole or in part of such tangible material, and all documents, memoranda, notes and writings containing or based on Disclosed Material and prepared by the Receiving Party.

7.  The Receiving Party acknowledges and agrees that in the event of any breach of this Agreement, the Disclosing Party may be irreparably and immediately harmed. Without prejudice to any other rights or remedies otherwise available to the Disclosing Party, the Disclosing Party shall be entitled to seek equitable relief by way of injunction to prevent breaches of this Agreement and to compel specific performance of the provisions of this Agreement, without need for proof of actual damages and the Receiving Party agrees not to oppose the Disclosing Party's right to seek such relief. The Receiving Party agrees to waive, and to cause its Representatives to waive, any requirement for the securing or posting of any bond in connection with such remedy. The Receiving Party also agrees to reimburse the Disclosing Party for all reasonable costs and expenses, including reasonable attorney's fees, incurred by it in successfully enforcing the Receiving Party or its Representatives' obligations hereunder, provided the court has found the Receiving Party or its Representatives in violation of this Agreement and has issued a permanent injunction. No failure or delay by the Disclosing Party in exercising any rights, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof or the exercise of any right, power or privilege hereunder.

8.  The Receiving Party hereby irrevocably and unconditionally submits to the jurisdiction of the courts of the State of New York and the United States District Court for the Southern District of New York for purposes of any suit, action or other proceeding arising out of this Agreement which is brought by or against the Disclosing Party and agrees that service of any process, summons, notice or document by U.S. registered mail to the Receiving Party's address shall be effective service of process for any action, suit or proceeding brought against the Receiving Party in any such court. The Receiving Party hereby irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement which is brought by or against the Disclosing Party in the courts of the State of New York or in the United States District Court for the Southern District of New York and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

9.  This Agreement may be modified or waived only by a separate writing by the parties hereto which expressly modifies or waives this Agreement.

10. Both parties agree that, until and unless a final written agreement regarding a definitive transaction has been executed, neither party is under any legal obligation and shall have no liability of any nature whatsoever with respect to any possible transaction by virtue of this Agreement. For purposes of this Agreement, a final written agreement referred to above does not include an oral agreement, an executed letter of intent, or any other preliminary written agreement, nor does it include any oral or written acceptance of an offer or proposal.

11. Either party may terminate this Agreement at any time by providing the other party with written notice of termination. The obligations set forth in this Agreement shall survive the termination of this Agreement with respect to the Disclosed Material disclosed prior to the termination of this Agreement.

12. This Agreement shall be governed by, and construed in accordance with, the laws of the State of North Carolina, without regard to the principles of conflict of laws thereof. This Agreement shall inure to the benefit of each of the parties and any successor in interest to the parties. The Agreement may be executed in counterparts, each of which shall be deemed to be an original, all of which shall constitute the same agreement.

**IN WITNESS WHEREOF,** each of the parties has duly executed and delivered this Agreement as of the date first written above.

Flickable LLC

By: _____
Name:   Catherine Banks
Title:   Chief Operating Officer

Factum Partners Inc.

By: _____
Name:   Tom Greenwood
Title:   President

2